**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| **MAIDEN CREEK ASSOCIATES,** | : | **CIVIL ACTION** |
| **L.P., and BOARD OF SUPERVISORS** | : | |
| **OF MAIDENCREEK TOWNSHIP,** | : | |
| **Plaintiffs,** | : | **No.  15-242** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES DEPARTMENT** | : | |
| **OF TRANSPORTATION, et al.,** | : | |
| **Defendants.** | : | |

**M E M O R A N D U M**

**Stengel, J.**                                                **August 20, 2015**

      Plaintiffs Maiden Creek Associates, L.P. and the Board of Supervisors of

Maidencreek Township bring this action against the United States Department of

Transportation (USDOT), Federal Highway Administration (FHWA), Pennsylvania

Department of Transportation (PADOT), and their agents. They seek to enjoin proposed

changes to Pennsylvania State Road Route 222 because the defendants allegedly did not

follow appropriate procedures under the National Environmental Policy Act (NEPA) and

the Administrative Procedures Act (APA). The defendants have moved to dismiss based

on a lack of standing. The plaintiffs moved for leave to amend their complaint to add

facts that may cure any deficiencies. For the reasons stated below, I will grant the

defendants' motion to dismiss and deny the plaintiffs leave to amend their complaint.

## I.     The Route 222 Corridor Improvement Project[1]

Route 222 is a state highway that runs through Berks County, connecting Allentown, Pennsylvania to Lancaster, Pennsylvania. The defendants are all involved with the Route 222 Corridor Improvement Project. The Project plans to make several changes to Route 222: 1) widening the roadway to include two lanes in each direction and a center turning lane; 2) improving an existing traffic signal at the intersection of Routes 222 and 73; 3) constructing a dual lane roundabout at the intersection of Tamarack/Genesis Drive; and 4) constructing a dual lane roundabout at the intersection of Route 222 and Schaeffer Road. The roundabout at Tamarack/Genesis will replace an existing traffic signal. The roundabout at the Schaeffer intersection will replace a standard "T" intersection without a traffic signal.

PADOT plans to use about $14.5 million dollars in federal funds to complete the Project. The FHWA is an agency of the USDOT and is the lead agency on the Project. The PADOT is serving as the FHWA's delegated agent. FHWA is funding the Project while PADOT is constructing it.

Plaintiff Maiden Creek Associates, L.P. (MCA) is a Pennsylvania limited partnership. MCA owns approximately 85 acres of commercially-zoned land located adjacent to Route 222, between Tamarack Boulevard and Evansville Road in Maidencreek Township, Berks County. MCA has proposed developing that parcel into a commercial shopping center. The Board of Supervisors of Maidencreek Township

---

[1] Information from this section is taken from the Complaint, unless otherwise noted. See Doc. No. 1.

(Board) is the governing body for Maidencreek Township, a second class township of the Commonwealth of Pennsylvania in Berks County, Pennsylvania.

MCA's property is located directly across from Schaeffer Road on Route 222.  As part of its shopping center plans, MCA has proposed adding a traffic signal to the intersection of Route 222 and Schaeffer Road. The Route 222 Project will require the defendants to take part of MCA's property in order to widen the road and construct the Schaeffer roundabout. MCA had several meetings with PADOT and provided its officials with information about its proposed shopping center and traffic counts. Both MCA and the Board have voiced their disapproval of the Project's proposed design.

## II.     NEPA's Statutory Framework

NEPA requires federal agencies to consider the environmental impacts of any major federal action.[2] See 42 U.S.C.A. § 4332. Three levels of review may be required depending on the extent of environmental impact: 1) Class I (EISs): actions that significantly affect the environment require an Environmental Impact Statement (EIS); 2) Class II (CEs): actions the do not individually or cumulatively have a significant environmental effect are entitled to a Categorical Exclusion from preparing an EIS or Environmental Assessment (EA); and 3) Class III (EAs): actions in which the significance of the environmental impact is unclear and which do not fall in the other two classes must prepare an Environmental Assessment. 23 C.F.R. § 771.115.

---

[2] A "major federal action" includes "new and continuing activities, including projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies…." 40 C.F.R. § 1508.18(a). "Actions include the circumstance where the responsible officials fail to act and that failure to act is reviewable by courts or administrative tribunals under the Administrative Procedure Act or other applicable law as agency action." Id. This Project is entirely funded by the federal government, making it a "major federal action" reviewable under the APA.

An EIS is a detailed written statement concerning the environmental impacts of a proposed action which must consider alternatives that would result in less detrimental environmental effects. An EA is a concise public document which provides evidence and analysis for whether an EIS is needed. Categorical Exclusion projects "do not individually or cumulatively have a significant effect on the human environment...." 40 C.F.R. § 1508.4. Therefore, they require neither an EA nor an EIS. Id.

The USDOT has promulgated rules about when its projects require a certain level of review under NEPA. See 23 C.F.R. § 771.115. For an FWHA project to be considered a Categorical Exclusion, it cannot: 1) "induce significant impacts to planned growth or land use for the area;" 2) "require the relocation of significant numbers of people;" 3) "have a significant impact on any natural, cultural, recreational, historic or other resource;" 4) "involve significant air, noise, or water quality impacts;" 5) "have significant impacts on travel patterns;" or 6) "either individually or cumulatively, have any significant environmental impacts." 23 C.F.R. § 771.117(a).[3]

On August 6, 2014, FHWA and PADOT approved a Categorical Exclusion (CE) for the Project. Because the CE was approved, the defendants have not conducted an EIS. They will not be required to conduct further environmental review of the Project under NEPA before it is funded and constructed.  Public meetings about the Project have been held. MCA's counsel has been involved and expressed comment as part of these meetings. See id. at ¶ 52.

---

[3] The USDOT has also offered a non-exhaustive list of projects which will automatically be considered CEs. See 23 C.F.R. § 771.117(c). The proposed project does not fit neatly into any one of those examples.

### III.      Procedure of this action

On January 20, 2015, the plaintiffs filed this action against the USDOT, Secretary

of the USDOT Anthony Foxx, the FHWA, Administrator of the FHWA Gregory Nadeau,

the PADOT, and the Secretary of the PADOT Barry Schoch.[4] The plaintiffs claim that

the CE did not comply with NEPA and was based on inaccurate and incomplete

information supplied by PADOT.[5] As a result, the approval of the CE was arbitrary,

capricious, and abuse of discretion under the Administrative Procedures Act (APA).[6] The

plaintiffs request that the defendants be required to conduct a full EIS in order to comply

with NEPA. They seek declaratory judgment that the Approved CE is invalid and an

injunction on any further construction on the Project until the EIS has been prepared.

They essentially want the court to compel the defendants to restart the process under

NEPA: withdraw the approved Categorical Exclusion, enjoin further construction and

funding, and require the defendants to prepare an EIS and hold new public hearings.

The defendants answered the complaint. They then moved to dismiss the

complaint under Rule 12(b)(1), claiming that the plaintiffs lack standing.[7] The crux of

their motion is that the plaintiffs have not alleged an injury covered by NEPA. In

---

[4] Foxx, Nadeau, and Schoch are being sued in their official capacities.

[5] The complaint also alleges that "PADOT's statement that the Schaeffer Roundabout will not preclude MCA's ability to construct the Proposed Shopping Center is completely inaccurate." Compl., Doc. No. at ¶ 53. See also ¶ 54 (explaining how MCA's proposed shopping center may not comply with state law in terms of its scope).

[6] The APA gives the plaintiffs the private right of action. See APA, 5 U.S.C.A. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.").

[7] After a telephone conference with counsel for the parties, I stayed the production of the administrative record until the motion to dismiss was decided, to ensure efficient use of time and resources for all involved.

additional to filing a response in opposition to the motion, the plaintiffs also moved for leave to file an amended complaint. Their amended complaint purports to cure deficiencies regarding their possible lack of standing. The defendants argue the amended complaint still fails to confer jurisdiction; its filing would be futile.

## IV.   Legal Standard

Article III of the United States Constitution limits the scope of this court's jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2.  In order for a court to hear a "case" or "controversy," the party asserting a claim must have "standing" or the right to bring the action. See Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 356-57 (3d Cir. 2014)(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "A motion to dismiss for want of standing is…properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." Constitution Party, 757 F.3d at 357 (quoting Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007)).  The allegations contained in the plaintiffs' complaint must be accepted as true and all reasonable inferences must be viewed in the light most favorable to the plaintiffs. See id. at 358. [8]

---

[8] I consider this jurisdictional challenge to be a facial one. A district court must determine if the Rule 12(b)(1) motion is a "facial" or "factual" attack on the complaint. Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 357-58 (3d Cir. 2014). "[A] facial attack contests the sufficiency of the pleadings, whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." Id. at 358 (citations and quotation marks omitted). A facial attack is made before a party answers, whereas a factual attack "may occur at any stage of the proceedings, from the time the answer has been served until after the trial has been completed." Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891-92 (3d Cir. 1977). See also Constitution Party, 757 F.3d at 357-58. An attack is "factual" when the plaintiff's allegations have been controverted. See Mortensen, 549 F.2d at 892 n. 17; Constitution Party, 757 F.3d at 358-59. A factual attack is viewed under the same standard as a Rule 12(b)(6) motion; a factual challenge does not afford any favorable presumption to the complaint's allegations. See Constitution Party, 757 F.3d at  359-61.

The parties do not address whether the challenge is facial or factual. Though the motion was filed after the defendants answered, the defendants do not rely on outstanding facts to contradict those alleged in the complaint. The defendants themselves cite the facial standard of review (i.e. that all factual allegations should be taken as true and reasonable inference drawn in the light most favorable to the plaintiffs).

The plaintiff has the burden to establish jurisdiction. <u>Mortensen v. First Federal Sav. and Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977).  To establish standing, a plaintiff must establish three elements: 1) "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," 2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," and 3) "that the injury will [likely] be redressed by a favorable decision." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).

Plaintiffs asserting jurisdiction based on a violation of the APA also have the burden of showing prudential standing. <u>See</u> <u>Bennett v. Spear</u>, 520 U.S. 154, 161-62 (1997).  The plaintiff must demonstrate that its complaint falls within the "zone of interests" to be protected or regulated by the statute in question. <u>Id.</u> at 162-63 (discussing <u>Association of Data Processing Service Organizations, Inc. v. Camp</u>, 397 U.S. 150, 153 (1970)).  The "zone of interest" test "seeks to exclude those plaintiffs whose suits are more likely to frustrate than to further statutory objectives." <u>Clarke v. Securities Industry Ass'n</u>, 479 U.S. 388, 397 n. 12 (1987). In this case, the plaintiffs must show that their claims fall within the zone of interests protected by NEPA.

## V.    The Original Complaint Does Not Establish Standing[9]

---

[9] This court has jurisdiction under 28 U.S.C. § 1331 (federal question), 5 U.S.C. §§ 702, 706 (Administrative Procedures Act). The court has the authority to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202. Venue is proper in this district because a substantial part of the events giving rise to this claim occurred in this district. <u>See</u> 28 U.S.C. § 1391(a).

MCA alleges the following harm:

- "The construction of the Project will prevent MCA from developing [its] Property with the Proposed Shopping Center or for any other reasonable use in accordance with its commercial zoning;"[10] Compl., Doc. No. 1 at ¶ 82.

- "PADOT's construction of the Schaeffer roundabout would require vehicles to access the Proposed Shopping Center directly from the Schaeffer Roundabout, which would result in unsafe traffic conditions." Id. at ¶ 36.

- "The proposed Schaeffer Roundabout cannot be designed in a manner that would safely accommodate the amount of traffic that will be generated by the Proposed Shopping Center." Id. at ¶ 37.

- "The proposed Schaeffer Roundabout would also require the condemnation of a portion of the Property in order for PADOT to physically construct the proposed Schaeffer Roundabout." Id. at ¶ 38.

- "PADOT has refused to consider the MCA's request to construct a traffic signal at the intersection of Route 222 and Schaeffer Road in lieu of the Schaeffer Roundabout." Id. at ¶ 39.

The Board alleges the following injuries:

- "The construction of the Project will prevent the Township from realizing the goals of its Comprehensive [development] Plan and Zoning Ordinance;"[11] Id. at ¶ 82.

---

[10] Allegedly, this harm would be "immediate and irreparable."

- "The construction of the Genesis Roundabout and the Schaeffer Roundabout will severely impede commercial development of the Route 222 Corridor in the Township." <u>Id.</u> at ¶ 45.

- "The construction of the Genesis Roundabout and the Schaeffer Roundabout will impair the ongoing viability of existing businesses within the Route 222 Corridor by restricting and impeding ingress and egress to those businesses." <u>Id.</u> at ¶ 46.

- "The construction of the Genesis Roundabout and the Schaeffer Roundabout will compromise the safety of motorists, bicycles, horse and buggies and pedestrians traveling within the Route 222 Corridor." <u>Id.</u> at ¶ 47.

The Board also alleges that commercial development is vital to the economic well-being of the Township and its residents. It implies that any hindrance of this commercial development would affect jobs, tax revenues, and businesses in the Township. <u>Id.</u> at ¶¶ 40-44.[12]

### a. Constitutional Standing

Several of the allegations made by MCA and the Board involve injuries to third parties. "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." <u>Warth v. Seldin</u>, 422 U.S. 490, 499-500 (1975). <u>See also</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 578 (1992). An association or organization may have standing to bring suit on behalf

---

[11] Allegedly, this harm would be "immediate and irreparable."

[12] Both plaintiffs also allege that the defendants have misrepresented information about the Project on the CE form and at public hearings. <u>See</u> Compl., Doc. No. 1 at ¶¶ 48-61.

or others in a representative capacity if three elements are met: 1) group members would otherwise have standing to sue as individuals, 2) the interests at stake are germane to the group's purpose, and 3) neither the claim made nor the relief requested requires the individual members to participate in the lawsuit. Blunt v. Lower Merion School Dist., 767 F.3d 247, 279 (3d Cir. 2014)(citing Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977)).

    MCA alleges that the Project as planned will create unsafe conditions for vehicles, travelers along Route 222, and hypothetical consumers of MCA's proposed shopping center. MCA has offered no evidence that that it has standing in a representative capacity. It cannot allege harm on behalf of these other individuals.[13] See Taubman Realty Group Ltd. Partnership v. Mineta, 198 F.Supp.2d 744, 757-60 (E.D. Va. May 3, 2002), aff'd, 320 F.3d 475 (4th Cir. 2003)("TRG claims to be asserting the safety and health interests of, and seeking to prevent perceived harm to, persons who are employed, and who shop, at the shopping center that TRG operates. Because the interests at stake in this case are not at all 'germane' to TRG's organizational purposes, however, it does not properly have standing to sue in an associational or representative capacity."). MCA does not have standing based on these allegations.

    The Board also makes similar allegations regarding the "safety of motorists, bicycles, horse and buggies and pedestrians traveling within the Route 222 Corridor" and about the economic well-being of residents. The Board represents the Township and its

---

[13] In addition, the type of harm alleged would be considered "generalized" and not "particularized." See Warth v. Seldin, 422 U.S. 490, 499 (1975)("[T]he asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."). It would not confer standing.

citizens. In this sense, the case for representative standing can more easily be made than for MCA. However, the Board does not offer information about how Township residents would have standing to sue (i.e. what particularized injuries they have or will experience), how this action is "germane" to its purpose, and why its individual members would not be required to take part in the lawsuit.[14] See Warth v. Seldin, 422 U.S. 490, 499 (1975)("[T]he asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."). Concerns about loss of tax revenue and jobs are also highly speculative. There is no indication that harm is "actual" and "imminent." The Board has also not shown that this alleged harm is "fairly traceable" to the defendants' proposed Project plans. See Streater v. U.S. Dept. of Transp., No. CIV. A. 95–2162, 1996 WL 134807, at *2-4 (E.D. Pa. Mar. 25, 1996)(finding that allegations of negative economic impacts as a result of Route 33 extension was too attenuated). These allegations do not confer standing.

MCA also makes allegations of personalized harm. Specifically, MCA alleges that the Project will require condemnation to part of its property and will prevent it from developing the property as it had planned. I find that these allegations are enough to establish constitutional standing.

---

[14] This, of course, assumes that the Board could be considered an association or organization for the purposes of standing. The idea that the Board, and not the Township itself, serves as the association of the residents is a stretch.

The Board also makes similar allegations. It claims that the Project will prevent it from carrying out its economic plans for the Township. These allegations are enough to establish constitutional standing for the Board.

### b.  Prudential Standing

Even if the plaintiffs can show constitutional standing, the defendants argue that the plaintiffs cannot establish they have prudential standing because the plaintiffs do not allege environmental injuries. Instead, their alleged harm centers on economic concerns.

"NEPA addresses environmental effects of federal actions." Metropolitan Edison Co. v. People Against Nuclear Energy, 460 U.S. 766, 778 (1983). "The purpose of NEPA is to protect the environment, not the economic interests of those adversely affected by agency decisions." Nevada Land Action Ass'n v. U.S. Forest Service, 8 F.3d 713 (1993)(citation omitted). "To establish an injury-in-fact from failure to perform a NEPA analysis, a litigant must show: 1) that in making its decision without following the NEPA's procedures, the agency created an increased risk of actual, threatened or imminent environmental harm; and 2) that this increased risk of environmental harm injures its concrete interest." Comm. to Save Rio Hondo v. Lucero, 102 F.3d 445, 449 (10th Cir. 1996). See also Wyoming v. U.S. Dept. of the Interior, 674 F.3d 1220, 1237 (10th Cir. 2012); Hartz Mountain Industries, Inc. v. Polo, No. Civ.A. 05-2530(JAP), 2005 WL 2807355, at *3 (D.N.J. Oct. 26, 2005).

As the Supreme Court explained in Metropolitan Edison Co. v. People Against Nuclear Energy, protection of human health and welfare was not the primary focus of NEPA. 460 U.S. 766, 773 (1983). "[A]lthough NEPA states its goals in sweeping terms

of human health and welfare, these goals are *ends* that Congress has chosen to pursue by *means* of protecting the physical environment." Id. (emphasis in original). The legislative history of NEPA shows that the types of harm it is intended to prevent are "irreparable damage to the air, land and water." Id.[15]

The Third Circuit has not addressed the issue of whether an economic injury alone is within NEPA's zone of interests. Courts in this Circuit are split on the issue. See Lake Erie Alliance for Protection of Coastal Corridor, et al., v. United States Army Corps of Engineers, et al., 486 F.Supp. 707 (W.D. Pa. 1980)(finding that secondary economic effects of a project are within the scope of interests considered by NEPA, giving plaintiffs standing); Borough of Carlstadt v. U.S. Army Corps of Engineers, No. Civ.A. 05-2771(JAP), 2006 WL 305314, at *6 (D.N.J. Feb. 8, 2006)("Because Plaintiff asserts purely economic injuries, Plaintiff does not have standing to challenge the Army Corps's action under NEPA.")(citing Town of Stratford, Conn. v. FAA, 285 F.3d 84, 88 (D.C. Cir. 2002)); Streater v. U.S. Dept. of Transp., No. CIV. A. 95–2162, 1996 WL 134807, at *5-6 (E.D. Pa. Mar. 25, 1996)(finding that allegations of unsafe conditions for pedestrians and bicyclists from design changes not enough to assert standing for NEPA violation).

Other Circuit courts have consistently denied standing under NEPA based solely on a threat of economic injury from federal agency actions. See Churchill Truck Lines,

---

[15] Even if the plaintiffs were able to establish representative standing for third parties, their allegations regarding potentially unsafe conditions to users of Route 222 would also fail under the prudential standing analysis, based on Metropolitan Edison Co. v. People Against Nuclear Energy, 460 U.S. 766, 773 (1983). See also Streater v. U.S. Dept. of Transp., No. CIV. A. 95–2162, 1996 WL 134807, at *5-6 (E.D. Pa. Mar. 25, 1996)(finding that allegations of unsafe conditions for pedestrians and bicyclists from design changes not enough to assert standing for NEPA violation).

Inc. v. U.S., 533 F.2d 411, 416 (8th Cir. 1976)("Petitioners, whose sole motivation in this case was their own economic self-interest and welfare, are singularly inappropriate parties to be entrusted with the responsibility of asserting the public's environmental interest in proceedings concerning the issuance of operating authority to motor carriers. Petitioners do not allege any environmental injury to themselves. Their interest in their economic well-being vis-a-vis their competitors is clearly not within the zone of interests to be protected by the National Environmental Policy Act."); Western Radio Services Co., Inc. v. Espy, 79 F.3d 896, 902-03 (9th Cir. 1996)("Western now attempts to characterize the alleged interference as an 'environmental impact,' yet Oberdorfer admitted that Western's sole complaint was alleged interference, which we have held is purely economic."); Ashley Creek Phosphate Co. v. Norton, 420 F.3d 934, 945 (9th Cir. 2005)("In light of the purpose of § 102(2)(C)—protection of the environment—and the specific statutory requirements for the content of an EIS, we hold that a purely economic injury that is not intertwined with an environmental interest does not fall within § 102's zone of interests."); Town of Stratford, Conn. v. FAA, 285 F.3d 84, 88–89 (D.C. Cir. 2002)("But we have squarely held that a NEPA claim may not be raised by a party with no claimed or apparent environmental interest…. It cannot be used as a handy stick by a party with no interest in protecting against an environmental injury to attack a defendant.")(citation omitted).[16]

---

[16] See also Latin Americans for Social and Economic Development, et al. v. Administrator of the FHWA, et al., 756 F.3d 447, 466 (6th Cir. 2014)(en banc)(finding prudential standing under NEPA when both economic and environmental injuries were alleged); Rosebud Sioux Tribe v. McDivitt, 286 F.3d 1031, 1038-39 (8th Cir. 2002)(allowing economic injury to confer prudential standing under NEPA but only when the challenged provision requires a consideration of economic effects)(finding no prudential standing because economic effects only need to

In an analogous case, the Fourth Circuit found that potential devaluation of commercial property was not an injury within NEPA's zone of interests. Taubman Realty Group Ltd. Partnership v. Mineta, 320 F.3d 475 (4th Cir. 2003). In that case, like this one, a real estate developer challenged proposed changes in access to a roadway project involving the FHWA and state officials under NEPA and the APA. Id. at 478. Specifically, the developer claimed that the roadway project did not comply with NEPA because an EIS was not prepared. Id. at 480. The harm alleged from that project was a lack of due process or meaningful opportunity to be heard, increased health and safety risk to workers as a result of increased traffic and pollution, economic losses, and devaluation of the plaintiff's commercial property. Id. at 480-81. The court affirmed the district court's finding that the first two alleged injuries were not "concrete interests" of the plaintiff. Id. at 481. The court found that the devaluation of property was not sufficient to meet the prudential standing requirement under NEPA. Id.

In Borough of Carlstadt v. U.S. Army Corps of Engineers, No. Civ.A. 05-2771(JAP), 2006 WL 305314, at *6 (D.N.J. Feb. 8, 2006), the Borough of Carlstadt brought suit against the Army Corps of Engineers for alleged NEPA violations related to the redevelopment of the Continental Airlines Arena in the New Jersey Meadowlands

---

be considered once an EIS has been prepared, not before); One Thousand Friends of Iowa v. Mineta, 250 F.Supp.2d 1064, 1071 (S.D. Iowa 2002)(dismissing shopping mall owner for lack of standing for a NEPA challenge based on economic harm or harm to employee interests); Hurd Urban Development, L.C. v. Federal Highway Admin., 33 F.Supp.2d 570, 574 (S.D. Tex. 1998)("[A]ll NEPA claims based on economic harm must be dismissed for lack of jurisdiction over the subject matter."); Moyle Petroleum v. LaHood, 969 F.Supp.2d 1332, 1336-37 (D. Utah 2013)("[I]t is clear that Moyle's concrete interests are in property access and business revenues from commuter traffic. These harms are not environmental, and as such are not within the *zone of interest* NEPA was designed to protect." (emphasis in original)); Association of Significantly Impacted Neighbors v. City of Livonia, 765 F.Supp. 389 (E.D. Mich. 1991)("ASIN has failed to demonstrate that the interest it seeks to protect, i.e., the alleged decrease in local property values, is within the zone of interests protected by the relevant [federal environmental] statutes.").

complex. Id. at *1. The court found that the plaintiff's alleged injuries—anticipated loss of tax revenue or increased expenditures—did not fall within NEPA's zone of interest. Id. at *6. "Because Plaintiff asserts purely economic injuries, Plaintiff does not have standing to challenge the Army Corps's action under NEPA." Id.

I find the reasoning in these cases to be persuasive. NEPA was enacted to address environmental concerns. It was not meant to address the economic consequences of federal actions. The plaintiffs' allegations of personal injury cannot confer prudential standing because they assert economic injuries, not environmental ones. These injuries are not within NEPA's zone of interests.

The plaintiffs argue that harm under NEPA to the "human environment" can include economic, aesthetic, health, and safety injuries. While these injuries may help establish standing under NEPA, they alone cannot require the preparation of an EIS, the ultimate relief which the plaintiffs seek. See 40 C.F.R. § 1508.14 ("Human environment shall be interpreted comprehensively to include the natural and physical environment and the relationship of people with that environment….This means that economic or social effects are not intended by themselves to require preparation of an environmental impact statement."). See also Town of Stratford, Conn. v. FAA, 285 F.3d 84, 88–89 (D.C. Cir. 2002); Taubman Realty Group Ltd. Partnership v. Mineta, 320 F.3d 475, 481 (4th Cir. 2003). This argument does not help the plaintiffs.

The plaintiffs also argue that the Third Circuit's decision in Society Hill Towers Owners' Ass'n v. Rendell, 210 F.3d 168 (3d Cir. 2000), warrants a finding of standing.[17] In Society Hill Towers, a community association of residents challenged a proposed House and Urban Development project under NEPA. Id. at 171-73. The district court had not addressed standing so the Third Circuit undertook the analysis. Id. at 175. The Third Circuit explained that the plaintiffs had standing because they alleged the project would cause increased traffic, pollution, and noise to the area near their homes. Id. at 176. These negative environmental effects would "detrimentally impair the ambiance of their historic neighborhood and their ability to use and enjoy the Penn's Landing waterfront." Id. The Third Circuit found that these allegations were enough to show standing under NEPA. Id. at 177-78.

The plaintiffs' injuries in this case are distinguishable in two respects: 1) they are not the residents themselves who potentially may be subject to negative effects in their environment, and 2) they are not trying to preserve the historic character or ambiance of the Route 222 Corridor. In fact, their goals are to develop the area and make it more commercial. Even if the plaintiffs were trying to preserve the "character" and "ambiance" of the Route 222 Corridor, they would be unable to establish standing because they would not be the ones whose recreational use or enjoyment of the environment would be impaired. MCA is a commercial entity, which by its very nature can't "enjoy" the aesthetics of its surroundings. See Rock Creek Pack Station, Inc. v. Blackwell, 344

---

[17] The plaintiffs also cite to West v. Secretary of the DOT, 206 F.3d 920 (9th Cir. 2000), to support the argument that they have standing. West, however, did not address what type of injury was required for prudential standing and, instead, was addressing the merits of a NEPA challenge under the APA. Id. at 924-30.

F.Supp.2d 192, 205 (D.D.C. 2004)("The plaintiffs do not provide, nor can this Court find, authority for the proposition that a commercial entity itself can enjoy the recreational use and aesthetic enjoyment of the environment. Consequently, such a commercial entity cannot establish standing under a recreational use and aesthetic enjoyment of the environment rationale."). The Board as individuals may have their enjoyment impaired, but this is not what they are asserting. Instead, their alleged injuries involve economic concerns or concerns about the safety and well-being of third parties. This is not enough to establish standing.  See Society Hill Towers, 210 F.3d at 177 (explaining that one of the requirements of prudential standing is that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

## VI.   Amended Complaint's Additional Allegations[18]

In the alternative, the plaintiffs have moved for leave to file an amended complaint with additional allegations of injuries. The plaintiffs claim these new allegations stem from information discovered after their initial complaint was filed.[19]

---

[18] The defendants argue that Exhibits A, B, and D attached to the plaintiffs' amended complaint cannot be considered because they would improperly supplement the record. These documents were prepared for MCA's application to the state for a highway occupancy permit for its proposed shopping center. The plaintiffs claim these documents should be a part of the administrative record. The full administrative record has not been produced yet so it is unclear if they are a part of the record. Whether these exhibits are a part of the record has little bearing on the outcome of my decision. The information they provide about alleged injuries was already offered in the original complaint or involves generalized concerns about increased traffic, noise, and pollution. This information does not help the plaintiffs.

[19] Allegedly, this information was produced as part of a mandamus action that MCA filed against PADOT to compel PADOT to comply with its own regulations. See Maiden Creek Associates, L.P. v. Pennsylvania Dep't of Transportation, No. 18 MD 2015 (Pa. Cmmw. Ct. Jan. 12, 2015). According to the plaintiffs, this newly discovered information should have been produced earlier, as part of documents obtained through a state Right-to-Know-Law inquiry.

In addition to the allegations already made, the amended complaint would also include the following allegations of injury on MCA's behalf:[20]

- The Project will include construction of two stormwater detention basins on MCA's property to handle additional stormwater runoff. First Am. Compl., Doc. No. 21-3 at ¶ 29E. The land for the stormwater basins will be an additional taking of land from MCA's property.  Id. at ¶ 37.

- The Scheaffer Roundabout would cause traffic to queue on Route 222 in front of MCA's property during peak periods, according to a PADOT internal memorandum. Id. at ¶ 39.

- "[The Project] will cause traffic congestion along Route 222 and within the Schaeffer Roundabout which will impede traffic flow in and out of the Proposed Shopping Center" and result in "noise and exhaust fumes." Id. at ¶¶ 40A, 40D.

-  The Schaffer Roundabout will be "aesthetically unpleasant and intimidating to potential patrons, and would dissuade potential patrons from coming to the proposed Shopping Center;" Id. at ¶ 40E.

- The Project will "result in additional stormwater runoff that would contain petroleum and other potential groundwater containments, which would be directed

_____

[20] The Amended Complaint also adds allegations that clarify the previous injuries asserted. For example, MCA alleges that the roundabouts will result in a higher incidence of traffic accidents according to empirical data. First Am. Compl., Doc. No. 21-3 at ¶¶ 30, 38. The Board also alleges that at least seven businesses between Route 73 and Schaeffer Road have moved or plan to move because of the proposed Project design. These additional factual allegations primarily deal with the plaintiffs' concerns about the economic well-being and/or safety of third parties. As I've already explained, they do not confer constitutional and/or prudential standing.

to, and deposited into, the Stormwater Basins proposed to be located on MCA's Property;" Id. at ¶ 40F.

- "The potential inadequate design, construction and/or maintenance of the Stormwater Basins could cause floods on the MCA Property" and "could result in groundwater contamination on and off MCA's Property which flows to Peters Creek, which is identified as an EV (Exceptional Value Watershed." Id. at ¶¶ 40G, 40H.

Beyond what the Board has already alleged, they also assert that the Project:

- will "increase traffic congestion, noise and pollution within the Route 222 Corridor in the Township;"

- "would be aesthetically unpleasant;"

- would "dissuade drivers from using Route 222 and would lead to higher traffic on other roads within the Township, thereby adversely affecting traffic patterns, noise and pollution in the Township;"

- would cause additional stormwater runoff "which could cause groundwater contamination of properties within the Township."

- will result in the "potentially inadequate design, construction and/or maintenance of the Storm water [sic] Basins [which] could cause flooding on Route 222 and private properties adjacent to Route 222;"

- will "increase the risk of potentially devastating cumulative environmental effects due to the Project and reasonably foreseeable future development/action(s) in the Township…"

- will "undermine the Township's laborious efforts to develop Zoning and Land Use Regulations which properly account for ecological, aesthetic, historic, cultural, health, economic, and social considerations."

## VII.   Amendment Would Be Futile

Federal Rule of Civil Procedure 15 provides that courts "should freely give leave" to amend a pleading "when justice so requires." FED. R. CIV. P. 15(a)(2). In considering when leave to amend should be granted, a court must consider: 1) circumstances such as undue delay, bad faith or dilatory motive, 2) whether there would be undue prejudice to the opposing party, or 3) whether the amendment would be futile. Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988)(citing Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227 (1962)).

Delay is undue where a plaintiff attempts to replead facts which could earlier have been pleaded.  See Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001) (citing Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 654-55 (3d Cir. 1998)).  "A finding of dilatory motive is justified where the plaintiff acts 'in an effort to prolong litigation.'" Breyer v. Meissner, 23 F. Supp. 2d 540, 542 (E.D. Pa. 1998). Such efforts are apparent when the motion attempts to plead additional information that was previously available, and the plaintiff fails to provide an explanation as to why the information was not included in the original complaint. See id. at 243 (citing Scattergood

v. Pearlman, 945 F.2d 618, 627 (3d Cir. 1991)). Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss. Jablonski, 863 F.2d at 292.

The defendants argue that the plaintiffs' should not be permitted to amend their complaint because amendment would be futile.[21] I agree. The plaintiffs' added allegations of injury still do not meet the requirements of standing. They either allege non-environmental injuries—i.e. safety issues or economic concerns—or assert injuries of third-parties without meeting the requirements of representative standing. While some added allegations fall closer to the zone of interests of NEPA—i.e. "potential" stormwater contamination, increased pollution, traffic congestion—those allegations are stated in the hypothetical, are "generalized," and/or are highly speculative.[22] There is no indication that they are particularized, actual, or imminent.[23]

---

[21]

[22] The defendants also point out that these allegations of environmental harm are ones only asserted after the defendants raised the issue of standing. They point out that the plaintiffs' own admissions in correspondence attached to their initial complaint show that MCA's main concern since the Project began was with its ability to develop its property as it saw fit. Its comments up until its motion for leave to amend have been about the effect of the proposed design—i.e. the use of the roundabout versus the use of traffic signal at Route 222 and Schaeffer—on access to its proposed shopping center. Likewise, the Board's main concerns have always been on the Project's effect on future economic development in the Township.

While I will not go so far as saying that this information points to a dilatory motive on the part of the plaintiffs, it does raise a specter of impropriety. "The N.E.P.A. simply was not meant to be used as a device whereby plaintiffs with strictly economic interests would be allowed to thwart governmental activity under the guise of environmental interest." Presidio Bridge Co. v. Secretary of State, 486 F.Supp. 288, 294 (W.D. Tex. 1978)(quoting Hiatt Grain & Feed, Inc. v. Bergland, 446 F.Supp. 457, 487 (D. Kan.1978))(quotation marks omitted). See also Gunpowder Riverkeeper v. Federal Energy Regulatory Com'n, --- F.3d ---- , No. 14–1062, 2015 WL 4450952, at *5 (D.D.C. 2015)("Although the affidavits of Gunpowder's members contain some assertions of injury that could be construed as environmental, see, e.g., Affidavit of SallyAnn & Michael Mickel, (stating affiants 'feel the aesthetic, emotional, and physical loss of our trees'), the petitioner itself does not offer them in that spirit…").

[23] The plaintiffs' remaining procedural injury—that the defendants offered inaccurate information on the CE form and at hearings—would not be enough to establish constitutional standing. See Summers v. Earth Island Institute, 555 U.S. 488, 496 (2009)("But deprivation of a procedural right without some concrete interest that is affected by

## VIII.  CONCLUSION

At issue in this case is the plaintiffs' disagreement with the defendants' proposed plans for roundabouts instead of traffic signals along Route 222. Unfortunately, NEPA was not intended to resolve these sorts of design-based disputes. The plaintiffs' claims are more properly addressed in the context of condemnation or other non-NEPA actions.[24]

For the reasons explained above, I will grant the defendants' motion to dismiss for lack of standing and deny the plaintiffs' motion for leave to amend their complaint.

An appropriate Order follows.

---

the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing."); <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 563 (1992)("But the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured.").

[24] Other avenues are available to the plaintiffs to address their concerns. The plaintiffs have already filed a state mandamus action to compel PADOT to comply with its regulatory procedures. The plaintiffs' concerns about stormwater design are addressed by the U.S. Clean Water Act's National Pollutant Discharge Elimination System (NPDES) permit process. This process addresses the mitigation of stormwater, allows for public comment, and provides an appeals process for the issuance of a permit.